**Robert G. MARSHALL; Patrick M. McSweeney, Plaintiffs–Appellants,**

v.

**M. Bruce MEADOWS, Individually and in his official capacity as Secretary and a member of the State Board of Elections; Pamela L. Clark, Individually and in her official capacity as a member of the State Board of Elections; George M. Hampton, Sr., Individually and in his official capacity as a member of the State Board of Elections, Defendants–Appellees,**

and

**John Warner, Senator, Intervenor–Appellee.**

No. 96–1685.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1996.

Decided Jan. 24, 1997.

**ARGUED:** Daniel A. Carrell, Carrell & Rice, Richmond, Virginia, for Appellants. James Walter Hopper, Office of the Attorney General of Virginia, Richmond, Virginia; Robert Hewitt Pate, III, Richmond, Virginia, for Appellees. **ON BRIEF:** Robert C. Rice, Carrell & Rice, Richmond, Virginia, for Appellants. James S. Gilmore, III, Attorney General of Virginia, A. Ann Berkebile, Office of the Attorney General of Virginia, Richmond, Virginia; Lewis F. Powell, III, Sarah C. Johnson, Richmond, Virginia, for Appellees.

Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.

## OPINION

HAMILTON, Circuit Judge:

Robert G. Marshall and Patrick M. McSweeney (the plaintiffs) appeal the district court's dismissal of their complaint for lack of subject matter jurisdiction. *See* Fed. R.Civ.P. 12(b)(1). We conclude the district court correctly dismissed the plaintiffs' complaint, and accordingly, we dismiss the appeal.

## I.

On February 21, 1995, incumbent United States Senator John Warner announced that he would seek the Virginia Republican Party's nomination for another Senate term. Pursuant to Va.Code Ann. § 24.2–509(B) (1993), Senator Warner opted for a primary election as the means for choosing the Virginia Republican Party's nominee.[1] Because Virginia law opens primary voting to all individuals qualified to vote, *see* Va.Code Ann. § 24.2–530, the effect of Senator Warner's decision was to allow non-Republicans the opportunity, along with Republicans, to have a hand in deciding who would be the Republican candidate in Virginia's 1996 United States Senate race.[2]

On December 9, 1995, almost a year after Senator Warner's announcement, the Central Committee of the Republican Party of Virginia (the Republican Central Committee), through a resolution, officially adopted a primary as the means for determining the Republican candidate for Virginia's 1996 United States Senate race. In adopting the primary election approach, the Republican Central Committee gave no indication that it chose a primary pursuant to the dictates of the Incumbent Protection Act. Nor did the Republican Central Committee, as a body, ever state that it would have chosen a "closed" primary (one in which only registered members of the Virginia Republican Party could vote) if it could have done so pursuant to Virginia law. In fact, also on December 9, 1995, the Republican Central Committee rejected an amendment to its Virginia Republican Party Plan that would have expressed a preference for a convention had Virginia law not provided for a primary through the Incumbent Protection Act.

After the Republican Central Committee's December 9, 1995 resolution, but prior to the holding of the actual primary on June 11, 1996, Robert Marshall, a Republican representing Virginia's 13th House of Delegates District, and Patrick McSweeney, the former Chairman of the Virginia Republican Party,[3] filed this suit against M. Bruce Meadows, Pamela L. Clark, and George M. Hampton, Sr. (collectively the defendants), personally and in their official capacities as members of the Virginia Board of Elections. The plaintiffs' suit, brought pursuant to 42 U.S.C. § 1983 (1995), alleged that the defendants' actions in enforcing Virginia's Open Primary Law violated their First Amendment rights to free speech and freedom of association. The district court granted intervenor status to Senator Warner on April 16, 1996. *See* Fed.R.Civ.P. 24.

The defendants filed a motion to dismiss the suit for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). Concluding that the plaintiffs lacked standing to bring the suit, the district court dismissed the plaintiffs' complaint.[4] The plaintiffs timely appealed.

## II.

The plaintiffs argue the district court erred when it concluded they lacked standing to bring this suit. We disagree. We review the district court's dismissal of

---

1. Section 24.2–509(b) is known generally as the Incumbent Protection Act. The Incumbent Protection Act allows an incumbent, who was nominated by primary for the previous election, to seek re-election by primary unless he consents to a different procedure.

2. Section 24.2–530 is known generally as the Open Primary Law.

3. At the time the district court issued its memorandum opinion and order dismissing the plaintiffs' complaint, McSweeney was the Chairman of the Virginia Republican Party.

4. The district court also dismissed the suit pursuant to the equitable doctrine of laches. However, because we agree with the district court that the case should be dismissed for lack of standing, we need not address the laches issue.

the suit for lack of standing *de novo.* *See Ahmed v. United States,* 30 F.3d 514, 516 (4th Cir.1994) (subject matter jurisdiction rulings reviewed *de novo* ).

One of the bulwark principles of constitutional law is the "cases" or "controversies" requirement for justiciability referred to in Article III. U.S. Const. Art. III, § 2, cl. 1; *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990). The doctrine of standing has always been an essential component of this case or controversy requirement of federal jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *see Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984) (standing a necessary core component of subject matter jurisdiction).

■ There are three basic components of standing: injury, causation, and redressability. In order to have standing in federal court, a federal complainant must demonstrate: (1) he has suffered an actual or threatened injury, *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982); (2) a causal connection between the injury complained of and the challenged action, *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976); and (3) the injury can be redressed by a favorable decision, *id.* at 38, 43, 96 S.Ct. at 1924, 1926–27; *see also Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136 (must be likely, as opposed to speculative, that court's decision will redress injury). The party invoking the jurisdiction of a federal tribunal bears the burden of establishing standing. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990).

We need not decide whether the plaintiffs satisfied the injury component of the standing analysis [5] because it is unquestionably clear that the plaintiffs failed to satisfy the latter two components, causation and redressability. In order to establish causation, the plaintiffs must prove that their injury "fairly can be traced to the challenged action." *Simon,* 426 U.S. at 38, 96 S.Ct. at 1924. Here, the challenged action is the Open Primary Law. However, it is not the Open Primary Law that is the cause of the plaintiffs' alleged injury. Rather, it is the decision of the Virginia Republican Party to conduct an "open" primary that is causing this alleged injury, as there is: (1) nothing unconstitutional about a political party's choice of an "open" primary, *see Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 215, 107 S.Ct. 544, 549, 93 L.Ed.2d 514 (1986) (party can legally determine vehicle for choosing candidates for office); and (2) simply *no indication* that the Virginia Republican Party would have a "closed" primary in the absence of the Open Primary Law or change to a "closed" primary if we declared the Open Primary Law unconstitutional. In other words, if a political party's choice of an "open" primary is a lawful and voluntary one, the decision of the party is the cause of the alleged "forced" association, not the state law requiring the "open" primary. *See Marchioro v. Chaney,* 442 U.S. 191, 199, 99 S.Ct. 2243, 2248, 60 L.Ed.2d 816 (1979) ("There can be no complaint that the party's right to govern itself has been substantially burdened by statute when the source of the complaint is the party's own decision...."). Because the alleged injury is caused by a voluntary choice made by the Virginia Republican Party and not the Open Primary Law, the plaintiffs have not established causation.[6] The Virginia Republican Party has made its choice to conduct a party primary in the manner it desires and there is no reason for us to interfere with that voluntary decision. *See Democratic Party of the U.S. v. Wiscon-*

---

5. Consequently, we decline to address whether: (1) an "open" primary law causes actual or threatened injury to a political party or its members and (2) a member of a political party can challenge an "open" primary in the absence of the party's participation in the challenge.

6. The Virginia Republican Party Plan states that only individuals who hold views in accord with the Virginia Republican Party may vote to select the Party's nominees for office. However, nowhere in the Virginia Republican Party Plan, nor in any other official Party document, does the Virginia Republican Party state that it ever held an "open" primary because it was forced into that position by the Open Primary Law. More importantly, the Virginia Republican Party chose an "open" primary and chose not to legally challenge the Open Primary Law.

*sin ex. rel. LaFollette,* 450 U.S. 107, 124 n. 27, 101 S.Ct. 1010, 1020 n. 27, 67 L.Ed.2d 82 (1981) ("It is for the [Virginia Republican Party]—and not . . . any court—to determine the appropriate standards for participation in the Party's candidate selection process.").

Finally, the plaintiffs have not demonstrated that their alleged injury can be redressed if we declared the Open Primary Law unconstitutional. If the Virginia Republican Party voluntarily elects an "open" primary, which it is legally entitled to do, then there is nothing this court can do to prevent the Virginia Republican Party from "forcing" its members to vote with non-Republicans. *See Tashjian,* 479 U.S. at 214, 107 S.Ct. at 548 (freedom of political association necessarily presupposes the party's right to choose who may participate in the party's activities). In other words, as long as the Virginia Republican Party voluntarily chooses to hold an "open" primary, the alleged injury cannot be redressed.

### III.

In summary, the district court correctly concluded the plaintiffs lacked standing to bring this suit. Accordingly, the appeal is dismissed.

*DISMISSED.*