Affirmed by published opinion. Judge GREGORY wrote the majority opinion, in which Judge DIÁZ joined. Chief Judge TRAXLER wrote a dissenting opinion.
GREGORY, Circuit Judge:
The 24th’ Senatorial District Republican Committee of Virginia' and Committee Chairman Kenneth H. Adams (together, the “Committee”), and Plaintiff-Intervenor Daniel Moxley, appeal the district court’s dismissal of their complaints for lack of subject matter jurisdiction. ' See Fed. R.Civ.P. 12(b)(1). For the following reasons, we conclude that the district court correctly dismissed the plaintiffs’ and plaintiff-intervenor’s complaints and therefore affirm.
I.
A.
'Under Virginia law, political parties generally “have the right to determine the method by which a party nomination for a member of ... any statewide office shall be made.” Va.Code Ann. § 24.2-509(A). “Notwithstanding” this general rule, the Incumbent Protection Act (the “Act”) provides that “[a] party shall nominate its candidate for election for a General Assembly district where there is only one incumbent of that party for the district by the method designated by that incumbent, or absent any designation by him by the method of nomination determined by the party.” Va.Code Ann. § 24.2-509(B) (emphasis added).
The Republican Party of Virginia (the ‘Tarty”) is governed pursuant to its Plan of Organization (the “Plan”), which the Committee acknowledges “is the Party’s definitive statement on any matter it addresses.” Pis.’ Mem. Supp. Mot. Prelim. Inj, at 3. According to the Plan, Legislative District Committees (“LDCs”) are unincorporated associations designated pursuant to the Plan that “determine whether candidates for Legislative District public office shall be nominated by Mass Meeting, Party ’Canvass, Convention or Primary, where permitted to do so under Virginia Law.” J.A. 163. The Committee is the LDC responsible for determining the method of nomination for candidates seeking the Republican nomination for the 24th Senatorial District for the Virginia General Assembly.
In December 2014, the Committee exercised its authority under the Plan and adopted a resolution designating a convention as the method of nominating the Republican * candidate for the 24th Senate District seat in the 2015 election. On February 23, 2015, incumbent state senator Emmett Hanger relied on the authority granted to him .by the Act and designated a primary as the method of nomination.
B.
The Committee filed this suit pursuant to 42 U.S.C. §§ 1983 and 1988 against the members of the Virginia State Board of Elections and the Virginia Department of Elections (together, the “Commonwealth”) seeking declaratory and injunctive relief. The Committee’s complaint alleges that the Act infringes on its First Amendment right to freedom of association by preventing it from determining the method of *628 nomination in contravention of the terms of the Plan.[1]
Senator Hanger and Moxley, who sought the Party’s nomination for Senator Hanger’s seat on the 24th District, both moved to intervene. Moxley alleged that the Act violates his constitutional rights ünder the Equal Protection Clause of the Fourteenth Amendment because it confers on an incumbent an electoral advantage and invidiously discriminates against him and all other potential challengers to Hanger.
Plaintiffs filed a motion for preliminary injunction seeking to enjoin the Commonwealth from implementing a primary. Three days before a scheduled hearing on the preliminary injunction, the defendants filed a motion to dismiss, arguing that the Committee failed to establish standing because the Plan expressly incorporatés Virginia law into its delegation of authority to the LDC.
At the outset of the motion hearing, the district court asked counsel whether there were any “issues of disputed fact.” J.A. 203. Counsel for the Committee responded, “We believe we do not.” . -The district court heard from both sides on the standing issue and the proper interpretation of the Plan. See J.A. 213-229.
The district court subsequently granted the defendants’ motions to dismiss, holding that the plaintiffs failed to meet their burden to establish standing, and denying the remaining pending motions as moot, including the motions for preliminary injunction. .
n.
On appeal, the plaintiffs argue that the district, court.erred by dismissing the complaint for lack of subject matter jurisdiction. We review the district court’s dismissal for lack of standing de novo. Lee Graham Shopping Center, LLC v. Estate of Kirsch, 777 F.3d 678, 680 (4th Cir.2015).
To have standing, a plaintiff must demonstrate (1) “he has suffered an actual or threatened injury,” (2) “a causal connection' between the injury complained of and the challenged action,” and (3) “the injury can be redressed by a favorable decision.” Marshall v. Meadows, 105 F.3d 904, 906 (4th Cir.1997). An “injury in fact” is “an invasion of a legally protected interest which is (a) concrete and particularized ..: and (b) actual or imminent, not conjectural or hypothetical.” Lujan v. Defenders of Wildlife, 504. U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation- marks omitted). The plaintiffs. have the.bqrden of alleging sufficient facts to demonstrate standing. Marshall, 105 F.3d at 906 (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).
III.
Before we turn to the language of the Plan itself, we address the Committee’s argument that the construction of the Plan is a jurisdictional fact intertwined with the facts central to the merits of, the dispute and that dismissal under Federal Rule of Civil Procedure. 12(b)(1) prior to allowing discovery was premature. In the alternative, the Committee argues that the evidence was .insufficient to dismiss at the 12(b)(1) stage,, particularly because the proper construction of the Plan was a contested fact. The Committee concedes that *629 it waived a .hearing on the motions to dismiss,- but-nevertheless insists that- the district. court failed to.- develop sufficient ■facts to resolve' the jurisdictional issue.
“[A] deféndant may challenge subject matter’ jurisdiction' in one of two ways.” Kerns v. United States, 585 F.3d 187, 192 (4th Cir.2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982)). “First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.” Id. (citing Adams, 697 F.2d at 1219). Alternatively, the defendant may contend “that the jurisdictional allegations of the complaint were not true.” Adams, 697 F.2d at 1219. In the second scenario, “[a] trial’ court may then go beyond the allegations of the complaint” and hold an evidentiary hearing to “determine if there are facts' to support the jurisdictional allegations.” Id. There is no presumption of truth and the court weighs the evidence presented in a 12(b)(1) hearing to determine jurisdiction. Id. “If, however, the jurisdictional facts are intertwined wijli the facts central to the merits of the' complaint, ‘a presumption of truthfulness should attach to the plaintiffs allegations.’ ” Rich v. United States, 811 F.3d 140, 145 (4th Cir.2015) (citing Kerns, 585 F.3d at 193). And “the court should resolve the relevant factual -disputes only after appropriate discovery.” Id. (citation omitted).
The Committee relies primarily on our decision in Kerns for its argument that dismissal at the pleading stage was premature. However, we have said that the “controlling jurisdictional fact in Kerns— •whether an employee was acting within the scope- of her employment for purposes of the Federal. Tort Claims Act — has no analog” where the issue before the court is “purely a¡ legal question that can be readily resolved in the absence of discovery.” Blitz v. Napolitano, 700 F.3d 733, 739 (4th Cir.2012). In Blitz, we analyzed whether the Transportation Security Administration’s. standard operating procedures for checkpoint screening constituted an “order” under 49 U.S.C. § 46110. Id. at 735. The district court had decided the question, and granted defendant’s motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), without reviewing the written procedures themselves and without an administrative record before it. Id. at 738. We decided that because an extensive administrative record had been filed in a similar case before the D.C. Circuit, and that such a record would be submitted if Plaintiffs filed .their petition in the appropriate court, the record before ,the district court was sufficient to answer the jurisdictional question. Id. at 739.
Like Blitz, we find that the record before the district court in this case was sufficient to decide the jurisdictional question. . Not only did the record contain the complete Party Plan, the district court undertook a thorough and exacting review of it. See J.A. 363-69.
Moreover, the Committee and the. Commonwealth both clearly represented to the district court that there were no issues of disputed fact. J.A. 203. The Committee now contends-that its “factual stipulation” was “limited” to the motion for preliminary injunction. There is no evidence from the transcript that the Committee’s stipulation was indeed, limited in this way and no argument presented for what .the legal significance of. such a limitation might be.
The Committee also fails to present a compelling argument as- to what evidence additional discovery would have brought to light. When asked by the district court whether -there was “any evidence [they could] provide .-.. as to why that particular-phrase is in that part of the plan and not in-other portions of the plan,” counsel *630 for the Committee replied: “Not any evidence, no.” J.A. 223. The Committee’s insistence that discovery was necessary is particularly puzzling given the fact that no one sought or mentioned discovery at the hearing or in the briefs they submitted after the hearing. See J.A. 312.
Finally, the district court’s singular use of the phrase “more reasonable” to describe the Committee’s construction of the Plan in its opinion does not in and of itself transform what is essentially a legal question into a factual one. “The interpretation of a written contract is a question of law that turns upon a reading of the document itself, and a district court is in no better position than an appellate court to decide such an issue.” Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir.2004). Because the proper construction of the Plan is a question of law and the record before the district court was sufficient, we conclude that jurisdictional discovery was not necessary.
IV.
Whether the Committee has standing depends on whether its alleged injury was the result of the Act or a lawful and voluntary decision on behalf of the Party. The Commonwealth argues that the Party has limited its authority to determine unilaterally the method of nomination through its adoption of Article V Section D(l)(a) of the Party Plan, which reads, “The Legislative District Committee shall determine whether candidates for Legislative District public office shall be nominated by Mass Meeting, Party Canvass, Convention or Primary, where permitted to do so under Virginia Law.” J.A. 163 (emphasis added). We agree.
A.
We have previously held that where an “alleged injury is caused by a voluntary choice made by the Virginia Republican Party and not [the challenged state law],” plaintiffs do not establish causation. Marshall, 105 F.3d at 906. In Marshall, two members of the Party challenged Virginia’s open-primary law, which allows primary voting for all individuals qualified to vote regardless of party affiliation, alleging that it burdened their rights to free speech and freedom of association. Id. at 905 (citing Va.Code Ann. § 24.2-530). Then-incumbent U.S. senator John Warner exercised his power under the Act and selected a primary as the means of nomination for his seat. Id. Several months later, the Party also adopted a primary. Id.
The district court dismissed the suit for lack of subject matter jurisdiction, and we affirmed, concluding that the plaintiffs failed to satisfy the causation and redress-ability components of the standing inquiry. Id. at 905-07. We found that it was the Party’s decision to conduct an open primary, rather than the open primary law itself, that was the cause of plaintiffs’ alleged injury because (1) it was not unconstitutional for a political party to choose an “open” primary and (2) there was “no indication” that the Party “would have a ‘closed’ primary in the absence of the Open Primary Law or change to a ‘closed’ primary if we declared the Open Primary Law unconstitutional.” Id. at 906. “In other words, if a political party’s choice of an ‘open’ primary is a lawful and voluntary one, the decision of the party is the cause of the alleged ‘forced’ association, not the state law requiring the ‘open’ primary.” Id. at 906 (citing Marchioro v. Chaney, 442 U.S. 191, 199, 99 S.Ct. 2243, 60 L.Ed.2d 816 (1979) (“There can be no complaint that the party’s right to govern itself has been substantially burdened by statute when the source of the complaint is the party’s own decision.”)).
*631 B.
We now turn to the construction of the Plan to determine whether the -Party voluntarily submitted to the Act and incorporated it by reference into the Plan.
“The constitution and by-laws adopted by a voluntary association constitutes a contract between the members, which, if not immoral or contrary to public policy, or the law, will be enforced by the courts.” Gottlieb v. Econ. Stores, Inc., 199 Va. 848, 102 S.E.2d 345, 351 (1958) (citation omitted). Therefore, we interpret the Plan according to general principles of contract interpretation under Virginia law.
In Virginia, “courts adhere to the ‘plain meaning rule in interpreting and enforcing a contract.” Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir.1999). If the contract “is complete on its face” and “plain and unambiguous in its terms,” we do not “search for its meaning beyond the instrument itself.” Id. Furthermore, we “read the contract as a single document and give meaning to every clause where possible ... givfing] effect to the presumption .that the parties have not used words aimlessly.” Id. (citations omitted.)
Whether the Party, voluntarily submitted to the Act turns on the meaning of the clause “where permitted to do so under Virginia Law.” This phrase does not appear anywhere else in the Plan, despite the fact that there are similar delegations in three other parts of the Plan’s text. For example, article III, section D(l)(b) provides that “[the State Central Committee] shall determine whether candidates for statewide public office shall be nominated by Convention, Party Canvass or Primary.” Similarly, article, IV, section D(l)(a) specifies that “The [Congressional] District Committee shall determine whether candidates for District public office shall be nominated by Convention, -Party Canvass or Primary.” See also art. Ill § D(l)(a) (“The Unit Committee shall determine whether candidates for local and constitutional public offices shall be nominated by Mass Meeting, Party Canvass, Convention, or Primary and whether Unit Chairman and Committee members shall be elected by Mass Meeting, Party Canvass, Convention, or Primary.”). When asked at the hearing if the Committee had “any evidence ... as to why that particular phrase is in that part of the plan and not in any other portions of the plan,” counsel for the Committee answered, “Not any evidence, no.” J.A 223. The Plan’s omission of the relevant language in three near-verbatim parallel provisions reflects a deliberate choice to provide a limited delegation of authority to the LDCs. See Smith Barney, Inc. v. Critical Health Sys., 212 F.3d 858, 861 (4th Cir.2000) (relying on the principle of expressio unius est exclu-sio alterius to interpret contract clause).
Furthermore, the fact that the Plan defines “primary” as “subject to the Election Laws of the Commonwealth of Virginia, except to the extent that any provisions of such laws conflict with this Plan, infringe the right to freedom of association, or are otherwise invalid ” indicates that the Party was well aware of how to draft language that supported a constitutional challenge to Virginia law. J.A. 23 (Plan at Art. II, ¶ 24) (emphasis added). A faithful reading of the contract that “gives effect to the presumption that the [Party has] not used words aimlessly” requires us to view these selective omissions and inclusions as intentional and meaningful. Hitachi, 166 F.3d at 624. If the Party had intended to preserve its ability to unilaterally choose the method of nomination for legislative districts, it could have done so. Similarly, if it had intended to give the Committee the authority to challenge a provision of Virginia law,.it could have done so. The plain *632 language of the contract, read as a single document, shows clearly that it did not.
The Committee: contends that the'language is more naturally read as “an acknowledgment of the potential 'for conflict between the Act and the Plan ... and a statement that the outer limits 'of an LDC’s authority to select the method of nomination are defined by the coercive force of Virginia law.” To the extent this differs from the Commonwealth’s interpretation, it certainly does not conflict with it) unless we read in nonexistent language. And that is precisely what the Committee would have us do — read the phrase “Virginia law” as “valid, constitutional Virginia law” and assume that the Act is unconstitutional.[2] In interpreting a contract under Virginia law, however, we “cannot read in[ ] ... language which will add to or take away from the meaning of the words already contained therein.” Wilson v. Holyfield, 227 Va. 184, 313 S.E.2d 396, 398 (1984). The Committee’s tortured reading contravenes the plain language of the Plan and requires us to assume the outcome of the-very challenge before us.
The Committee’s attempts to distinguish the facts of Marshall sice similarly unavailing. As we explainéd above, disagreement over the Plan’s meaning does not transform this legal dispute over contract interpretation into a factual one. Moreover; our holding in Marshall was clear: where the alleged injury is caused by the Party’s voluntary choice, the Party does not establish causation. 105 F.3d at 906. The injury in both cases is traceable to the Party’s voluntary choice: in Marshall, the choice was to .hold an open primary. Id. Here, the choice was to defer to the incumbent’s selected nomination method by limiting the authority of the LDC. Whatever factual distinctions may .exist do not render inapplicable the analysis and holding of Marshall.
Finally, the Committee’s suggestion that the district court erred by failing to secure a definitive- interpretation of the Plan from the Party isuntimely and therefore waived, as any request should have been made to the district court. Helton v. AT & T, Inc., 709 F.3d 343, 360. (4th Cir.2013) (citing Muth v. United States, 1 F.3d at 250 (4th Cir.1993)).
We conclude that the language of the Plan is clear arid unambiguous: the Plan delegates tó the Committee the authority to determine the nomination method unless Virginia law otherwise limits that authority. Where Virginia law'sets forth an alternative method of nomination, the Plan does not give the Committee the authority to supersede or challenge that determination. Because the Party has made a vol *633 untary choice to limit the Committee’s authority in this way, the plaintiffs have “no complaint that the party’s right to govern itself has been -substantially burdened by” the Act because “the source of the complaint is the party’s own' decision.” Marshall, 105 F.3d at 906 (citing Marchioro, 442 U.S. at 199, 99 S.Ct. 2243). Accordingly, we affirm the district court’s holding that the Committee lacks standing to .bring this suit.
V.
Lastly, we address Moxley’s'claim that he has standing independent of the Party to bring his equal protection claim.
Under 'Virginia law, there are two entities that have the right to determine the nomination method: political parties and incumbents. Moxley is a member of the Party and, as a member, he is contractually bound by the Plan’s rules and decisions. See Gottlieb v. Econ, Stores, Inc., 199 Va. 848, 102 S.E.2d 345, 351 (1958) (“The constitution and by-laws adopted by a voluntary association constitutes a contract bé-tween the members, which, if not immoral or contráry to public policy, or the law, will be enforced by the courts.” (citation omitted)). The Plan does not "authorize individual party officials or members to determine the nomination method for legislative districts. Moxley seems to recognize this, as he acknowledges that if 'the Committee had chosen a primary, he would have been “uninjured” because he has “no legal claim to any other method of nomination.” J.A. 344.
Because neither Virginia law nor the Plan ’gives Moxley “a legally protected interest” in determining the nomination method in the first place, he fails to make out “an invasion of a legally protected interest,”. i.e. actual injury, in this case. Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (emphasis added); see, e.g., Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 321. (4th Cir.2002) (observing that land transaction which would prevent development of land previously designated as a roadway did not impact plaintiffs’ “liberty interest in access to their community” because “under Virginia law they have no entitlement to the construction of a roadway”).
The dissent relies on out of circuit authority to support its view that Moxley’s alleged interest in depriving his opponent the ability to choose “the nominating method that would best ensure his re-nomination” is sufficient to establish his own independent standing. Dissenting op. at 627 (citing Texas Democratic Party v. Benkiser, 459 F.3d 582, 585-87 & n. 4 (5th Cir.2006); Schulz v. Williams, 44 F.3d 48, 53 (2d Cir.1994); Owen v. Mulligan, 640 F.2d 1130, 1132-33 (9th Cir.1981)). But even if we assume Moxley has a legally protected interest', he still fails to demonstrate how that injury is redressable by a[1] decision of this Court. In Benkiser, for example, the Fifth Circuit found that plaintiff political party’s “threatened loss of political power ... likely would be redressed by a favorable decision, which would preclude a Republican party candidate.” Benkiser, 459 F.3d at 587 (emphasis added) Here, however, the plain language of 'the Plan indicates that only the LDC shall determine the method of nomination and’ only where the application of Virginia law does not limit that authority. Even in the absence of the' Act, Moxley is bound by the LDC’s choice of nomination method. Accordingly, even if the Act were held unconstitutional, the Party is not precluded from “voluntarily electing]” to defer to the incumbent’s choice, “which it is legally entitled to do.” Marshall, 105 F.3d.at 907. And “there, is nothing [we] can do to prevent” the Party from deferring to the incumbent’s choice. Id. ■ ‘
*634 VI.
We must apply the plain language of the contract. For the foregoing reasons, the decision of the district court is

AFFIRMED.

. Although the Committee argues here that it also'raises an equal protection challenge, it did not plead a claim under the Equal Protection Clause in the district court. Because this issue is raised for the first time on appeal, we decline to address it. See Muth v. United States, 1 F.3d 246, 250 (4th Cir.1993).

, The dissent relies on DIRECTV, Inc. v. Imburgia, — U.S. -, 136 S.Ct. 463, 469, 193 L.Ed.2d 365 (2015), to support the proposition that "the phrase ‘Virginia Law’ in the Plan .., cannot be construed to include invalid Virginia statutes.” Dissenting op. at 630. DIRECTV concerned the interpretation of the phrase “law of your state” in a customer service agreement arbitration clause. DIRECTV, 136 S.Ct. at 466. The California Court of Appeals had interpreted "law of your state” to include California law it conceded was invalidated by the Supreme Court’s decision in AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). Id. at 467. The Supreme Court reversed, holding that the California Court of Appeal’s interpretation did "not place arbitration contracts ‘on equal footing with all other contracts,’ ” did “not give ‘due regard ... to the federal policy favoring arbitration,’ ” and therefore was "pre-empted by the Federal Arbitration Act,” Id. at 471. DIRECTV is of no import here because no state or federal court has held that Virginia’s Incumbent Protection Act is unconstitutional or preempted by federal law. Thus, eVen if we did construe " ‘Virginia law’ to encompass only yalid Virginia law,” as the dissent suggests, the Incumbent Protection Act, unlike California’s pre-Concep-cion state law, has never been invalidated by statute or this, or any other, Court.

. Section 24.2-509(A) also includes similar language concerning the nomination of candidates for the United States Senate or for any statewide office.