**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1131**

───────────────

GARY D. LECLAIR,

                Appellant,

    and

RODNEY K. ADAMS; JOHN T. JESSEE; PAUL C. KUHNEL; ANDREW K. CLARK; ROBIN TESKIN; GRETCHEN JACKSON; MEGAN BEN'ARY; STEVEN BLAINE; JAMES CARROLL; BRIAN DONNELL; ROBERT FLETCHER; ROBERT HARRISON; MICHAEL HOLM; CHARLES HORN; RAY KING; DAVID LAY; JOSEPH LAGROTTERIA; ILAN MARKUS; DAVID PHILLIPS; CHRISTOPHER PERKINS; CHRISTOPHER PIZZO; THOMAS REGAN; PETER VAN ZANDT; ROBERT WAYNE; ANDREW WHITE; DIANE WILSON; THOMAS WOLF; ROBERT WONNEBERGER; KAREN YATES,

                Parties-In-Interest,

      v.

LYNN TAVENNER,

                Trustee - Appellee.

───────────────

**No. 23-1133**

───────────────

GARY D. LECLAIR,

                Debtor - Appellant,

    and

MEGAN BEN'ARY; STEVEN BLAINE; JAMES CARROLL; BRIAN DONNELL; ROBERT FLETCHER; ROBERT HARRISON; MICHAEL HOLM; CHARLES HORN; RAY KING; DAVID LAY; JOSEPH LAGROTTERIA; ILAN MARKUS; DAVID PHILLIPS; CHRISTOPHER PERKINS; CHRISTOPHER PIZZO; THOMAS REGAN; PETER VAN ZANDT; ROBERT WAYNE; ANDREW WHITE; DIANE WILSON; THOMAS WOLF; ROBERT WONNEBERGER; KAREN YATES,

>Debtors,

v.

LYNN LEWIS TAVENNER,

>Trustee - Appellee.

_____

**No. 23-1134**
_____

GARY D. LECLAIR,

>Debtor - Appellant,

and

ROBIN TESKIN; GRETCHEN JACKSON,

>Debtors,

v.

LYNN LEWIS TAVENNER,

>Trustee - Appellee.

_____

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  David J. Novak, District Judge.  (3:22-cv-00237-DJN; 3:22-cv-00235-DJN; 3:22-cv-00328-DJN)

_____

Argued:  October 29, 2024                                  Decided:  February 7, 2025

2

Before DIAZ, Chief Judge, and WYNN and THACKER, Circuit Judges.

Vacated and remanded by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Wynn and Judge Thacker joined.

**ARGUED:**  David Robert Berry, GENTRY LOCKE, Roanoke, Virginia, for Appellant. Paula Steinhilber Beran, TAVENNER & BERAN, PLC, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Monica Taylor Monday, Andrew M. Bowman, GENTRY LOCKE, Roanoke, Virginia, for Appellant.

3

DIAZ, Chief Judge:

In this bankruptcy appeal, we are asked to interpret the operating agreement of LeClairRyan PLLC, a now defunct law firm. The bankruptcy and district courts concluded that the agreement barred the law firm's Members[1] from withdrawing from the firm after a dissolution event, including "[a]n election to dissolve the [firm] made by holders of a majority of the Common Shares." J.A. 385.

Gary D. LeClair, a founding Member of the firm, attempted to withdraw, but the bankruptcy and district courts ruled that his attempt was ineffective because it came after LeClairRyan's other Members voted to create a dissolution committee to wind up the firm. Because LeClair remained a Member on the day the firm filed for bankruptcy, he was on the hook for some of the firm's tax obligations. Faced with this tax burden, LeClair appeals.

We agree with LeClair that the bankruptcy and district courts erred in concluding that the agreement prohibited his withdrawal, and so we vacate and remand.

I.

A.

LeClairRyan operated successfully for several decades, but by 2019 the firm was in financial distress. On July 26, 2019, LeClair announced his "withdraw[al] as a member of LeClairRyan PLLC, effective immediately" and his intent to "resign [his] employment

---

[1] "Member" is the operating agreement's term for a partner in the firm.

effective as of 11:59 PM on August 4, 2019." J.A. 408. LeClair's resignation date was later advanced to July 31.

At the time of LeClair's announcement, he held common and preferred shares of the firm. Though LeClair purported to withdraw immediately, under the firm's operating agreement he continued to hold his shares and so remained a Member until his resignation date.

On July 29, 2019—after LeClair announced his immediate withdrawal but before his employment terminated—the firm's other Members voted to dissolve the firm. The Members established a Dissolution Committee, which was "empowered to assume all powers and functions" of the firm's leadership. J.A. 266–67. The Dissolution Committee was further "empowered to determine the Dissolution Effective Date." J.A. 267.

But the Committee never set a Dissolution Effective Date. Instead, after considering various possibilities, the Committee opted to file for bankruptcy.

## B.

LeClairRyan then filed a voluntary chapter 11 bankruptcy petition on September 3, 2019. In connection with the petition, the firm filed "a list of [its] equity security holders of each class showing the number and kind of interests registered in the name of each holder" under Federal Rule of Bankruptcy Procedure 1007(a)(3).[2] The list was dated "as of July 29, 2019." J.A. 214. It included LeClair as one of the firm's equity holders.

---

[2] The rule was recently amended, and the current version makes a few immaterial language changes.

5

The bankruptcy case was later converted to a chapter 7 proceeding, and the U.S. Trustee appointed Lynn Tavenner as LeClairRyan's Trustee.

The Trustee prepared K-1 forms for the equity holders included on the list filed by the firm.[3]  LeClair and several others who received the forms contacted the Trustee with many "inquiries, complaints, and, in certain instances, demands" about LeClairRyan's status as a flow-through taxpayer and the resulting assignment of tax liabilities to the individuals included on the equity security holders list.  J.A. 757–58.

The Trustee explained that she couldn't alter LeClairRyan's tax status and that it was proper for her to rely on the equity holders list filed by the firm.  But she continued to receive correspondence from some of the K-1 recipients.

To settle the issue, the Trustee moved to have the bankruptcy court approve her reliance on the list of equity holders.  LeClair objected and separately moved to amend the equity holders list.[4]

The bankruptcy court ruled for the Trustee.  The court found that the effective date of dissolution was July 29, 2019, when LeClairRyan's Members voted to dissolve the firm. And it concluded that the operating agreement prevented Members from transferring their

---

[3] K-1 forms are how partnerships report their partners' shares of business income and other tax information to the IRS.  *About Form 1065, U.S. Return of Partnership Income*, IRS, https://www.irs.gov/forms-pubs/about-form-1065 [https://perma.cc/G4YU-PH8C].

[4] Several others included on the equity holders list joined in LeClair's motion to amend.  Some appealed separately to the district court, but LeClair is the only Member before us in these consolidated appeals.

shares back to the firm after dissolution.  Accordingly, the court held that LeClair was properly listed as an equity holder.

LeClair appealed to the district court, which largely affirmed.  But it reversed "to the extent that the Bankruptcy Court improperly ruled that the Trustee may rely on future revisions of the [equity holders list], as that aspect of the Bankruptcy Court's ruling constituted an improper advisory opinion." *Adams v. Tavenner*, 648 B.R. 800, 829 (E.D. Va. 2023).  The court also directed the bankruptcy court to change the date of the equity holders list so that it mirrored the filing date of the bankruptcy petition.[5]

This appeal followed.

## II.

"[B]efore we consider the merits of an appeal, we have an independent obligation to verify the existence of appellate jurisdiction." *Porter v. Zook*, 803 F.3d 694, 696 (4th Cir. 2015) (cleaned up).  While appellate courts ordinarily have jurisdiction over appeals from the "final decisions" of lower courts, 28 U.S.C. § 1291, the rules are different in bankruptcy appeals.  In that context, district courts have appellate jurisdiction over the "final judgments, orders, and decrees" of bankruptcy courts.  28 U.S.C. § 158(a)(1).

Comparing the two jurisdiction statutes, the Supreme Court has explained that "[t]he ordinary understanding of 'final decision' is not attuned to the distinctive character of bankruptcy litigation." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 38 (2020).

---

[5] No party appeals these aspects of the district court's order.

7

The Court noted that "[d]elaying appeals from discrete, controversy-resolving decisions in bankruptcy cases would long postpone appellate review of fully adjudicated disputes," *id.*, and could require unravelling subsequent bankruptcy court decisions, *id.* at 39. Accordingly, "Congress made orders in bankruptcy cases immediately appealable [to the district courts] if they finally dispose of discrete disputes within the larger bankruptcy case." *Id.* (cleaned up).

Since the bankruptcy court's order conclusively interpreted LeClairRyan's operating agreement, it was appealable to the district court.

We then have jurisdiction to hear bankruptcy appeals from "all final decisions, judgments, orders, and decrees" entered by the district courts or bankruptcy appellate panels. 28 U.S.C. § 158(d)(1). The district court's order, like the bankruptcy court's, conclusively interpreted the operating agreement. And though the district court directed the bankruptcy court to modify its order on remand, its directions were ministerial since they left the bankruptcy court without discretion.

We therefore have appellate jurisdiction over the district court's order. *See United States v. Baxter*, 19 F.3d 155, 156 (4th Cir. 1994) (per curiam); *Thompson v. Virginia* (*In re Thompson*), 16 F.3d 576, 577 n.1 (4th Cir. 1994).

## III.

"We review the district court's decision by applying the same standard of review that it applied to the bankruptcy court's decision. That is, we review findings of fact for clear error and conclusions of law de novo." *Kielisch v. Educ. Credit Mgmt. Corp.* (*In re*

8

*Kielisch*), 258 F.3d 315, 319 (4th Cir. 2001) (quoting *Deutchman v. Internal Revenue* (*In re Deutchman*), 192 F.3d 457, 459 (4th Cir. 1999)).  We review "the bankruptcy court's interpretation of [a] contract . . . de novo."  *Rosen v. Clawson* (*In re Flying A Commc'ns, Inc.*), No. 97-1359, 1998 WL 45446, at *2 (4th Cir. Feb. 6, 1998); *see also Hendricks v. Cent. Reserve Life Ins.*, 39 F.3d 507, 512 (4th Cir. 1994).

Meanwhile, we review the bankruptcy court's denial of a motion to amend the equity security holders list for abuse of discretion.  *See Waldron v. Brown* (*In re Waldron*), 536 F.3d 1239, 1241 (11th Cir. 2008).  A court abuses its discretion by drawing an erroneous legal conclusion or making a clearly erroneous factual finding.  *United States v. Chikvashvili*, 859 F.3d 285, 292 (4th Cir. 2017).

## IV.

### A.

Having established our jurisdiction and standard of review, we turn to the merits of LeClair's appeal.  The bankruptcy rules require chapter 11 debtors to file "a list of the debtor's equity security holders of each class showing the number and kind of interests registered in the name of each holder."  Fed. R. Bankr. P. 1007(a)(3).  The list may be amended by the debtor at will or upon the motion of a party in interest after notice and a hearing.  Fed. R. Bankr. P. 1009(a).

LeClair contends that the list filed in this case wrongly includes him because he withdrew from the firm before it filed for bankruptcy and therefore held no equity as of that date.  He challenges the bankruptcy and district courts' conclusions that (1)

LeClairRyan dissolved on July 29, 2019, when its Members voted to form the Dissolution Committee, and (2) Members could not withdraw under the operating agreement once that happened.

As we explain, we agree with LeClair's second challenge. So we need not reach the first.

## B.

LeClairRyan was organized under Virginia law, and its operating agreement states that it should be interpreted under Virginia law. So we start there.

In Virginia, "courts adhere to the 'plain meaning' rule in interpreting and enforcing a contract." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999). "If the contract is complete on its face and plain and unambiguous in its terms, we do not search for its meaning beyond the instrument itself." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 631 (4th Cir. 2016) (cleaned up). We must "read the contract as a single document and give meaning to every clause where possible[,] giving effect to the presumption that the parties have not used words aimlessly." *Id.* (cleaned up).

## C.

Under the firm's operating agreement, only firm employees who were lawyers were allowed to own equity in the firm. And owning equity made a lawyer a Member.

The agreement outlined the effects of a Member's withdrawal from the firm. It defined a "Withdrawing Member" as one "who voluntarily terminates his or her employment." J.A. 338 (§ 1.01(vvvv)). When a Member departed the firm, LeClairRyan "purchase[d] and redeem[ed] from the [Member], and the [Member sold] to the [firm] all

10

Shares . . . held by the [Member] immediately prior to the termination of his or her employment . . . ." J.A. 339 (§ 2.02(a)). The shares were "deemed sold and transferred to the [firm] as of" the termination of the Member's employment. J.A. 344 (§ 2.02(g)). The agreement detailed a process for determining the price of the shares.

The bankruptcy and district courts relied on section 5.03 of the agreement to conclude that LeClair couldn't withdraw from the firm following a dissolution event. This section, labeled "No Withdrawal," provides:

> A Member shall not cease to be a Member as a result of the Bankruptcy of such Member or as a result of any other events specified in the [Virginia] PLLC Act. So long as a Member continues to hold any Shares, such Member shall not have the ability to withdraw or resign as a Member prior to the dissolution and winding up of the [firm] and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the dissolution or winding up of the [firm] shall be null and void and of no force or effect. As soon as any Person who is a Member ceases to hold any Shares, such Person shall no longer be a Member.

J.A. 364 (§ 5.03).

The bankruptcy court asserted in conclusory fashion that "per [that section], [M]embers could no longer withdraw or resign from the [firm]" once "dissolution was effective on July 29, 2019." *In re LeClairRyan PLLC*, No. 19-34574, 2022 WL 1195642, at *3 (Bankr. E.D. Va. Apr. 21, 2022).

The district court expanded a bit, noting that all the firm's Members necessarily terminated their employment by September 2019 "because the Firm no longer existed post-dissolution except for wind-up purposes, and LeClairRyan attorneys could not continue to practice law at the Firm following July 29, 2019." *Adams*, 648 B.R. at 826. The district court reasoned that section 5.03's prohibition on Member withdrawal "prior to the

11

dissolution and winding up of the [firm]" creates an exception to the ordinary rule in the agreement that a Member's shares are automatically transferred back to the firm when the Member departs. *Id.*

LeClair argues that under the operating agreement he couldn't terminate his employment at the firm without transferring his shares. It's undisputed that LeClair's employment ended on July 31, 2019. LeClair presses that when that happened, his shares were automatically returned to the firm, and he was no longer a Member.

On LeClair's reading, section 5.03's prohibition on "the ability to withdraw or resign as a Member prior to the dissolution and winding up" of the firm applies only "[s]o long as [the] Member continues to hold any Shares." J.A. 364 (§ 5.03). But the provision doesn't prevent a Member from disposing of his or her shares through transfer, redemption, or otherwise. And once a Member "ceases to hold any Shares"—such as through the automatic redemption that occurs when a Member departs the firm—that person "shall no longer be a Member." J.A. 364 (§ 5.03).

### D.

Looking at the plain meaning and context of section 5.03, as we must under Virginia law, we agree with LeClair that the provision doesn't prevent Members from withdrawing after a dissolution event.

As always, we begin with the provision's text. And that text doesn't prohibit a Member from leaving the firm's membership generally but only *while retaining shares*.

The bankruptcy and district courts effectively read this condition out of the provision, which is contrary to Virginia law. *See 24th Senatorial Dist. Republican Comm.*,

12

820 F.3d at 631 (explaining that Virginia law requires courts to "give meaning to every clause [of a contract] where possible"). Instead, they divined a new temporal condition that prohibited Member withdrawal *after* a dissolution event. In their view, once a dissolution event occurred, Members couldn't withdraw. But that limitation is nowhere in the agreement.

To be sure, section 5.03 says that while a Member owns shares, any attempted withdrawal is ineffective "prior to the dissolution and winding up" of LeClairRyan. J.A. 364 (§ 5.03). Yet all this language signals is that the link between Membership and owning shares applies so long as LeClairRyan exists (i.e., during the life of the firm). A Member can't withdraw before the firm's dissolution and winding up—"[s]o long as [the] Member continues to hold any Shares[.]" J.A. 364 (§ 5.03). But it doesn't prohibit Member withdrawal *after* dissolution.

If section 5.03 meant what the bankruptcy and district courts said it means, the provision might say something like:

> No Member shall have the ability to withdraw or resign as a Member following an Event of Dissolution identified in Section 11.01 of this Agreement, and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to winding up of the firm shall be null and void and of no force or effect.

But the section says no such thing. Rather, it bars withdrawal only when two conditions are met: the firm has not wound up, and the Member holds shares.

The structure of section 5.03 also supports our reading. The prohibition against withdrawal is found in the section's second sentence. As we've explained, this sentence bars Member withdrawal while the Member holds shares during the life of the firm. The

13

third sentence describes the flip side of this scenario: once a Member does dispose of his or her shares, that person ceases to be a Member.  These two sentences work together to make clear that someone is a Member only if he or she owns shares.

The district court reasoned that section 5.03's third sentence "does not apply here," stating that it only applies to a Member "who otherwise would *not* be affected by the rest of the provision, such as when a Member resigns before the dissolution process begins . . . ."  *Adams*, 648 B.R. at 826.  But this conclusion requires reading section 5.03 as providing for alternative scenarios, with different parts of the section applying in different circumstances.  A better interpretation views the section as a whole and gives effect to each sentence.  *See Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019).  Our interpretation does so.

Background principles of Virginia law on business organizations reinforce our holding.  LeClairRyan was a Virginia professional limited liability company organized under the Commonwealth's Professional Limited Liability Company Act.  That statute, in turn, incorporates the Virginia Limited Liability Company Act.  Va. Code Ann. § 13.1-1122.

Under the Limited Liability Company Act, members by default can dissociate from a firm without impacting their membership interests "[e]xcept as provided in the articles of organization or an operating agreement."  *Id.* § 13.1-1040.2(A).  The statute also allows a person to become a member without owning shares.  *Id.* § 13.1-1038.1(C).

The second and third sentences of section 5.03 of the operating agreement alter these default rules and make clear that LeClairRyan Members must hold shares.  This backdrop

14

of Virginia corporate law confirms our reading that all section 5.03 does is link Membership and holding shares during LeClairRyan's existence.

The Trustee suggests that LeClair first identified these provisions of Virginia law on appeal, so he has forfeited any reliance on them. But we reject that contention because LeClair's arguments simply offer more reasoning in support of his central claim that the bankruptcy and district courts misread section 5.03 of the operating agreement. *See 68th St. Site Work Grp. v. Alban Tractor Co.*, 105 F.4th 222, 230 n.7 (4th Cir. 2024) (concluding that new arguments raised on appeal in support of a party's "central claim" below are permissible); *United States v. Boyd*, 5 F.4th 550, 556 (4th Cir. 2021).

## V.

The bankruptcy and district courts erred in concluding that section 5.03 of LeClairRyan's operating agreement prohibited LeClair from withdrawing from the firm after a dissolution event. It follows then that the bankruptcy court abused its discretion in denying LeClair's motion to amend on that basis. Given our ruling, we need not decide whether what transpired between LeClair's announcement of his departure and his termination date constituted a dissolution event.

We vacate the district court's judgment and remand to the district court for further remand to the bankruptcy court. We leave it to the bankruptcy court on remand to determine whether any equitable considerations warrant denial of the motion to amend despite LeClair's correct interpretation of the operating agreement.

*VACATED AND REMANDED*

15