PUBLISHED

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

AMERICAN CANOE ASSOCIATION,
INCORPORATED; PROFESSIONAL
PADDLESPORTS ASSOCIATION; THE
CONSERVATION COUNCIL OF NORTH
CAROLINA, INCORPORATED,
                    *Plaintiffs-Appellees,*

and

UNITED STATES OF AMERICA,
                    *Plaintiff,*

v.

MURPHY FARMS, INCORPORATED, d/b/a
Murphy Family Farms; D.M. FARMS
OF ROSE HILL,
                    *Defendants-Appellants.*

No. 04-2052

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Senior District Judge.
(CA-98-4-7-F; CA-98-19-7-F; CA-98-209-5-F)

Argued: May 26, 2005

Decided: June 21, 2005

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

---

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Widener and Judge Niemeyer joined.

---

**COUNSEL**

**ARGUED:** Richard Edward Schwartz, CROWELL & MORING, Washington, D.C., for Appellants. Carolyn Smith Pravlik, TERRIS, PRAVLIK & MILLIAN, Washington, D.C., for Appellees. **ON BRIEF:** Kirsten L. Nathanson, CROWELL & MORING, Washington, D.C.; Reef C. Ivey, II, SHANAHAN LAW GROUP, Raleigh, North Carolina, for Appellants. Bruce J. Terris, TERRIS, PRAVLIK & MILLIAN, Washington, D.C., for Appellees.

---

**OPINION**

LUTTIG, Circuit Judge:

Defendants-appellants Murphy Farms, Inc., and D.M. Farms of Rose Hill (collectively, "the Farms") appeal from the district court's order finding subject matter jurisdiction of a citizen suit brought under the Clean Water Act by plaintiffs-appellees American Canoe Association, Inc., Professional Paddlesports Association, and The Conservation Council of North Carolina, Inc. (collectively, "the citizen groups"). Because we conclude that the district court correctly held that the citizen groups satisfied the jurisdictional requirements for a citizen suit under section 505(a) of the Clean Water Act ("CWA"), we affirm the judgment of the district court.

I.

The facts and procedural history of this case are detailed at length in our prior published opinion in this case, *Am. Canoe Ass'n, Inc.* v. *Murphy Farms, Inc.*, 362 F.3d 505, 509-12 (4th Cir. 2003) ("*Murphy Farms II*"), and we summarize them only briefly here. The citizen groups that are parties to this appeal filed suit against the Farms in January 1998, alleging that the Farms violated the CWA by spilling swine wastewater into North Carolina rivers without a National Pollution Discharge Elimination System ("NPDES") permit. *Id.* at 510. Subsequent litigation with the United States as intervenor resulted in a consent decree. *Id.* at 510-11. However, the citizen groups' participation in the consent decree, and thus their eligibility for an award of

attorneys' fees, was made contingent on their ability to show that, at the time that they filed their complaint in January 1998, they both possessed Article III standing and satisfied the jurisdictional requirements for bringing a citizen suit that are imposed by section 505(a) of the CWA, 33 U.S.C. § 1365(a). *Id.* at 511. The district court initially ruled for the citizen groups on both issues. *Id.* at 512. On appeal, we affirmed the district court's decision on the issue of Article III standing, *see id.* at 517, but we remanded for factual findings on the issue of jurisdiction under section 505(a), *see id.* at 520-22.

On remand, the district court made detailed factual findings, focusing on five spill events in which the Farms discharged or nearly discharged swine wastewater into nearby Six Runs Creek while spraying the wastewater onto agricultural fields as irrigation and fertilizer. J.A. 1159-66. Two of these spill events occurred prior to the filing of the citizen groups' complaint on January 18, 1998, and three occurred after the filing of the complaint. In the first event, in November 1996, wastewater flowed off two heavily sloped sprayfields into the creek while the spraying equipment was operating without supervision. The operators had carelessly placed the spraying equipment at the lower end of the sloped fields, permitting the spill in violation of the CWA. J.A. 1159. Second, in July 1997, wastewater spilled from a sprayfield into the creek because an operator had incorrectly set the pump timer so that the spraying equipment continued to pump after completion of spraying, causing ponding in the field; this incident also resulted in a violation of the CWA. J.A. 1160.

Third, after the filing of the complaint, in the spring of 1999, a careless operator allowed his spraying equipment to run without supervision, causing a discharge of wastewater into the creek in violation of the CWA. J.A. 1161. Fourth, in October 1999, the same careless operator incorrectly set the pump timer so that the spray gun continued to pump after the spraying reel was fully retracted (much like the July 1997 event), causing ponded wastewater in the adjacent woods. J.A. 1162-63. And fifth, on February 5, 2000, one of the land technicians did not show up for work, forcing one man to supervise two spraying events several miles apart; as a result, wastewater ponded on one of the sprayfields and spilled off in the direction of the creek. J.A. 1164-65. For the fourth and fifth events, the evidence was

inconclusive as to whether the wastewater actually flowed into the creek in violation of the CWA. J.A. 1163, 1165.

For each of these five events, the district court held that "there were fewer responsible *and* competent land techs employed and/or on duty than were required to operate the hog waste management system in compliance with the Clean Water Act," J.A. 1167, and that this shortage "both before and after the filing of the complaint, was a common causal factor contributing to the pre- and post-complaint discharges," J.A. 1168. The district court thus concluded that, despite the Farms' numerous good-faith efforts to control their waste spillage problem, "there was a continuing risk of recurrence in intermittent or sporadic violations at the time [the citizen groups] filed [their] complaint because the Farms' land tech personnel management practices and policies at that time were inadequate in both quantity and quality." J.A. 1168-69. On these grounds, the district court held that the citizen groups had satisfied the jurisdictional requirements for citizen suits in section 505(a).

## II.

On appeal, we uphold the district court's findings of fact unless they are clearly erroneous, but we review its legal conclusions de novo. *Mackey* v. *Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

Section 505(a) of the CWA provides that "any citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of" the standards of the Act. 33 U.S.C. § 1365(a) & (1) (internal division omitted). The Supreme Court has held that a citizen suit under section 505(a) may not be premised solely on past violations of the Act. Rather, "[t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation — that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 57 (1987) ("*Gwaltney I*"). On remand from *Gwaltney I*, we elaborated that, in order to establish jurisdiction, a citizen-plaintiff must prove at trial an "ongoing violation" that had been occurring when the complaint was filed:

> Citizen-plaintiffs may accomplish this [proof of an ongoing violation] either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations. Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition.

*Chesapeake Bay Foundation, Inc.* v. *Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171-72 (4th Cir. 1988) ("*Gwaltney II*"). *See also Chesapeake Bay Foundation, Inc.* v. *Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 694 (4th Cir. 1989) ("*Gwaltney III*").

The district court was correct in concluding that the citizen groups had satisfied their burden under the second prong of the *Gwaltney II* test.\* The occurrence of the three sporadic, post-complaint spill events demonstrated that the Farms had not eliminated the "real likelihood of repetition" of CWA violations as required by the second prong of *Gwaltney II*. As the district court found, these repeated spills were not freak occurrences, but all resulted from the potential for spraying equipment to malfunction during unsupervised or under-supervised operation. In the face of this risk, despite its good-faith efforts to eliminate equipment problems, the Farms had evidently failed to adopt adequate policies and employ sufficient personnel for the supervision of the spraying equipment as it operated. J.A. 1167. As evidenced by the recurring spills, in January 1998 the Farms were guilty of ongoing "intermittent or sporadic violations" with a "continuing likelihood of recurrence," *Gwaltney II*, 844 F.2d at 171-72, and were thus "in violation of" the Act at the time of the complaint. 33 U.S.C. § 1365(a).

---

\*In the alternative, the citizen groups argue that the single post-complaint CWA violation that they proved on remand, namely the spring 1999 spill event, is sufficient to establish jurisdiction under the first prong of *Gwaltney II*. We need not decide whether a *single* post-complaint violation can constitute "*violations* that continue on or after the date the complaint is filed" under the first prong of the *Gwaltney II* test, however, because the citizen groups here prevail under the second prong. *Gwaltney II*, 844 F.2d at 171 (emphasis added).

On appeal, the Farms contend that the district court imposed an unfair burden on them by finding them to be "in violation of" the Act at the time of the complaint despite their admittedly extensive good-faith efforts to correct equipment malfunctions and to reduce the risk of future violations. *See* J.A. 1175 ("[T]here is no doubt that the Farms consistently implemented genuine and timely remedial measures."). Essentially, the Farms propose that we graft an exemption onto the jurisdictional requirements of section 505(a) to shield from suit those past violators who have undertaken good-faith remedial efforts at the time of the complaint. Otherwise, the Farms argue, *Gwaltney II* imposes on defendants the impossible burden of eliminating all human error in their operations. But, contrary to the Farms' argument, it is plainly possible for those undertaking good-faith remediation, such as the Farms, nevertheless "to be in violation" of the Act within the meaning of section 505(a), because the CWA creates a regime of strict liability for violations of its standards. *See* 33 U.S.C. § 1311(a) ("Except as in compliance with [inapplicable exemptions], the discharge of any pollutant by any person shall be unlawful."); *Stoddard* v. *Western Carolina Regional Sewer Auth.*, 784 F.2d 1200, 1208 (4th Cir. 1986) ("Liability under the Clean Water Act is a form of strict liability."). For this reason, the Supreme Court directed in *Gwaltney I* that past violators such as the Farms continue to be "in violation of" the Act while there exists an *actual likelihood* of recurring violations, regardless of the defendant's bona fides or current subjective culpability for that risk. *See Gwaltney I*, 484 U.S. at 56. Therefore, the fact that the defendants had undertaken remedial efforts prior to the complaint does not *ipso facto* establish the absence of federal jurisdiction over a citizen suit, so long as such remedial efforts were insufficient to eliminate the "real likelihood of repetition" of past violations. *Gwaltney II*, 844 F.2d at 172. Moreover, even if the *feasibility* of compliance with the Act were relevant to our inquiry into whether the Farms were *actually* "in violation" in January 1998 (which it is not), the citizen groups point out that, after the February 2000 spill event, the Farms undertook staffing reforms that have successfully forestalled any subsequent spills — suggesting both that the district court's determination of the cause of the spills was correct and that the strict-liability burden of *Gwaltney II* was not then as impossibly onerous as the Farms now contend. We thus reject the Farms' argument that its good-faith remedial efforts were alone sufficient to

establish the absence of jurisdiction under section 505(a) over the plaintiffs' citizen suit against the Farms.

## III.

For the above-recited reasons, the judgment of the district court is affirmed.

*AFFIRMED*