UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1183

ALAN J. SCHNEIDER,

Plaintiff - Appellant,

v.

DONALDSON FUNERAL HOME, P.A.; DONALDSON PROPERTIES NO 3
LLC; DEWITT JAY DONALDSON; HOWARD COUNTY, MARYLAND,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  J.
Frederick Motz, Senior District Judge.  (8:16-cv-02843-JFM)

Argued:  January 25, 2018                          Decided:  May 7, 2018

Before GREGORY, Chief Judge, NIEMEYER, and AGEE, Circuit Judges.

Affirmed by unpublished opinion.  Chief Judge Gregory wrote the opinion, in which Judge
Niemeyer and Judge Agee joined.

**ARGUED:**  Alexander J.E. English, GREENSPRING LEGAL, LLC, Silver Spring,
Maryland, for Appellant.  Thomas Graham Coale, TALKIN & OH, LLP, Ellicott City,
Maryland, for Appellees Donaldson Funeral Home, P.A., Donaldson Properties No. 3 LLC,
and DeWitt Jay Donaldson.  Lewis J. Taylor, HOWARD COUNTY OFFFICE OF

LAW, Ellicott City, Maryland, for Appellee Howard County, Maryland. **ON BRIEF:** Gary W. Kuc, County Solicitor, Louis P. Ruzzi, Senior Assistant County Solicitor, HOWARD COUNTY OFFICE OF LAW, Ellicott City, Maryland, for Appellee Howard County, Maryland.

---

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

Donaldson Funeral Home, P.A, Donaldson Properties No. 3 LLC, and DeWitt Jay Donaldson (together, "Donaldson") want to build a funeral home and mortuary in Howard County, Maryland. Alan J. Schneider, who lives close by, would prefer that they not. Having failed to convince Howard County to deny Donaldson the requisite building and zoning permits, Schneider brought a citizen suit against Donaldson and Howard County for purported violations of the Clean Water Act (CWA).

The fatal flaw in Schneider's case is that he has properly pleaded only one discharge of pollutants that is actionable under the CWA: Donaldson's commencement of construction on the funeral home without a CWA permit for the water pollution that will be caused by stormwater runoff. But before Schneider filed his complaint, Donaldson obtained coverage under a CWA permit authorizing his construction activities and the resulting stormwater runoff. Therefore, Donaldson's violation is "wholly past" and cannot form the basis of a CWA citizen suit. And because Schneider has not properly pleaded any other actionable CWA violations, his remaining claims are meritless. Because the district court reached the same conclusion (though on somewhat different grounds), we affirm.

I.

A.

Donaldson owns a 3.2-acre piece of property in Howard County, Maryland (the "Donaldson Property"). Schneider lives 200 feet south of the Donaldson Property on the same road. Both pieces of property are bordered to the west by an unnamed creek (the

3

"Tributary") that originates just north of the Donaldson Property and flows south/southwest until joining with a larger creek named Carrolls Branch 1.

Donaldson wants to build a 17,000 square-foot funeral home and mortuary on the Donaldson Property. Pursuant to Howard County's local zoning regulations, Donaldson petitioned the County for approval of the project in January 2010. Howard Cty. Zoning Regs. §§ 105.0, 106.0, 131.0(N)(22) (2013). At one of the many public hearings, Donaldson called a witness who testified without rebuttal that there were no wetlands on the Donaldson Property. In July 2013, over the passionate opposition of Schneider and others, the County approved Donaldson's petition. As required by Howard County regulations, Donaldson subsequently submitted site development plans. Howard Cty. Zoning Regs. § 131.0(I)(1).

Two years later, Howard County and the Maryland Department of the Environment (MDE) discovered nontidal wetlands on the Donaldson Property. Maryland regulation requires a 25-foot protective buffer around nontidal wetlands. Md. Regs. Code (the "COMAR") § 26.23.02.01; *id.* § 26.23.01.01(14), (74). Any construction activity inside this protective buffer requires a Maryland state permit, COMAR § 26.23.02.01, and any construction activity in the wetlands themselves separately requires a CWA permit, 33 U.S.C. § 1344; 33 C.F.R. § 323.3.

An internal County record from August 2015 noted that in response to the discovery, Donaldson planned to revise the site development plans to avoid disturbing the wetlands or the protective buffer. In October 2015, an environmental consultant delineated the wetlands and the 25-foot buffer, with MDE approval. Later that month, Donaldson

4

submitted to the County revised site development plans that included the wetlands. In April 2016, the County issued Donaldson a Commercial New Building Permit.

On March 26, 2016, Donaldson began construction on the funeral home by "moving heavy equipment onto, clearing vegetation from, and grading the [Donaldson] Property." J.A. 14. Unless authorized by a CWA permit, stormwater runoff from construction activities constitutes actionable water pollution under the CWA because the sediment disturbed in construction will wash into waters due to rain and snow. 40 C.F.R. § 122.26(a)(9)(i)(B), (b)(15)(i), (c)(1). The Donaldson Property construction site was not covered by a permit and was soon found noncompliant by MDE. On April 4, 2016, Donaldson filed a notice of intent to be covered by the Maryland General Permit for Stormwater Associated with Construction Activity (the "GCP"), which provides the relevant CWA authorization. COMAR § 26.08.04.09.A. On April 19, 2016, MDE granted Donaldson coverage under the GCP. Several weeks later, MDE found the funeral home project to be in compliance.

B.

Having failed to halt the funeral home at the local level, Schneider turned to federal court. On April 6, 2016, Schneider sent Donaldson and Howard County a notice of intent to sue, as required by the CWA. 33 U.S.C. § 1365(b). On August 12, 2016, Schneider brought a four-count CWA citizen suit against Donaldson and Howard County in federal district court. He alleged that Donaldson was constructing the funeral home without the requisite CWA permits for the stormwater runoff and the construction in wetlands. He also claimed that Donaldson and Howard County had each violated Maryland and CWA

5

regulations by not conducting an antidegradation review, which he claimed was required to ensure that the funeral home project would not impair the water quality of the Tributary and Carrolls Branch 1.  Schneider attached a number of exhibits to his complaint, including the County's internal record about discovering wetlands on the Donaldson Property, the environmental consultant's report delineating the wetlands with MDE's approval, and Donaldson's notice of intent to be covered by the GCP.[1]  J.A. 174–78, 78–79, 80–96.  Almost a month after he filed his complaint, Schneider moved for a preliminary injunction and temporary restraining order (TRO).

---

[1] To apply for coverage under the GCP, an applicant need only submit to MDE a notice of intent to be covered by the permit.  But the GCP provides for a two-week public comment period on every notice.  J.A. 160.  During that period, any person can request that a project "be required to obtain an individual permit" due to that project's anticipated noncompliance with sediment control or stormwater management standards.  *Id.*  MDE evaluates each comment and may require the petitioner to apply for an individualized permit in lieu of promptly granting coverage under the GCP.

We note that despite attaching Donaldson's notice of intent to his complaint, Schneider does not indicate whether he filed a comment requesting that Donaldson obtain an individual permit.  The absence of comment is particularly conspicuous given Schneider's claim before this Court that he was denied an opportunity to offer public comments about the funeral home project.  Appellant Opening Br. 31; Appellant Reply Br. 13.

We also note that Schneider can still ask MDE to consider making Donaldson apply for an individual CWA permit.  The GCP states that "[a]ny interested person" can petition the Director of MDE's Water Management Administration to require a GCP permit holder to "apply for and obtain either an individual permit or coverage under an alternative general permit."  J.A. 157.  Indeed, the GCP states that "if there is evidence indicating that stormwater discharges authorized by this permit cause, have the reasonable potential to cause[,] or contribute to an excursion above any applicable water quality standard," MDE may require the permit holder "to obtain an individual permit or alternative general permit coverage," revoke the permit, or modify the permit "to include different limitations and requirements."  J.A. 171.  Therefore, Schneider's ability to comment publicly on the funeral home project has not been foreclosed.

Donaldson and the County separately filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Donaldson attached to his motion his permit from MDE showing that he has been covered under the GCP since April 19, 2016. J.A. 184. Donaldson also attached the inspection reports from MDE. J.A. 182–83, 185.

On January 6, 2017, without holding a hearing, the district court denied Schneider's motion for preliminary injunction/TRO and granted Donaldson's and the County's motions to dismiss. The district court concluded that Schneider had Article III standing to sue Donaldson, but had failed to make out an "ongoing allegation" (as is required to bring a CWA citizen suit) because Donaldson is now covered by the GCP. Even if Schneider had alleged an ongoing violation, the case was an improper collateral attack on the issuance of a permit, and the court should abstain from asserting jurisdiction. The court also concluded that Schneider lacked Article III standing to sue Howard County because it did not have an obligation to perform an antidegradation review and had not caused Schneider's injury-in-fact. Schneider timely filed a notice of appeal.

## II.

We review de novo the district court's dismissals under Rule 12(b)(1) and Rule 12(b)(6). *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 505 (4th Cir. 2015).

Defendants here challenged the factual sufficiency of the pleadings to make out subject matter jurisdiction under Rule 12(b)(1). In a factual challenge, the district court can "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations, without converting the motion to a

7

summary judgment proceeding." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks and citation omitted); *accord Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). But we have held that an evidentiary hearing is not necessary when, as here, there are no relevant issues of disputed fact, the only question before the district court was one of law, and the record was "sufficient to decide the jurisdictional question." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016).

Defendants also challenged the sufficiency of the pleadings to state a claim under Rule 12(b)(6). In this context, "the reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level' and 'to state a claim to relief that is plausible on its face.'" *Goldfarb*, 791 F.3d at 508 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). We must accept all *well-pleaded* material facts as true and draw all inferences in the plaintiff's favor. *Id.* But we do not "apply the same presumption of truth to 'conclusory statements' and 'legal conclusions'" in a complaint. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And we may also consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss as long as they are "integral to the complaint" and "authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails." *Id.* (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)

8

(ellipses omitted)).  The Court may also take judicial notice of "matters of public record."

*Goldfarb*, 791 F.3d at 508–09.

Therefore, we may consider the exhibits Schneider attached to his complaint, as well as an unrelated permit held by Howard County that Schneider incorporated by reference in his complaint and attached to his reply brief in support of his motion for a preliminary injunction/TRO.  *Goines*, 822 F.3d at 166.  We may also consider the documents Donaldson attached to his motion to dismiss, which show Donaldson's coverage under the GCP and the related MDE inspection reports.  *Id.*; *Alcorn*, 820 F.3d at 629.  Schneider does not contest the fact that MDE granted Donaldson coverage under the GCP in April 2016; therefore, whether Schneider has alleged an ongoing violation of the CWA is a question of law that can be answered based on the record.  *Alcorn*, 820 F.3d at 629.  Nor does Schneider contest the documents' authenticity, and they are clearly integral to Schneider's complaint, which is based solely on Donaldson's alleged lack of coverage under the GCP.  *See Goines*, 822 F.3d at 166 (noting that a document is integral if claims "turn on" or are "otherwise based on" the document or if the document has "independent legal significance" to plaintiff's claim (internal quotation marks and citations omitted)).

III.

The CWA was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  Congress set (among other goals and policies) a "national goal that the discharge of pollutants into the navigable waters be eliminated."  § 1251(a)(1).  To help enforce its provisions, CWA authorizes

9

citizen suits: "[A]ny citizen may commence a civil action on his own behalf [] against any person . . . who is alleged to be in violation of [] an effluent standard or limitation under this chapter." § 1365(a)(1). Such a violation includes discharging pollutants without a permit or violating the terms of a permit. § 1365(f)(1).

To bring a citizen suit, a plaintiff must satisfy several related conditions. First, sixty days before bringing a citizen suit, "the would-be plaintiff must give notice of the alleged violation to the EPA, the State in which the alleged violation occurred, and the alleged violator." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174–75 (2000). Second, the plaintiff must allege a "continuous or intermittent violation" of the CWA. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987). The Supreme Court has held that the CWA does not confer jurisdiction over citizen suits alleging "wholly past violations," *id.*, including "violations that have ceased by the time the complaint is filed," *Laidlaw*, 528 U.S. at 175. This rule is inherent in the structure of the CWA, which established the sixty-day notice to give the purported violator "an opportunity to bring itself into complete compliance with the Act and thus [] render unnecessary a citizen suit." *Gwaltney*, 484 U.S. at 60.

Schneider satisfied the first requirement by providing Donaldson and Howard County with a notice of intent to sue four months before filing his complaint. But his attempt to satisfy the second falls short. In the complaint, Schneider alleged four ongoing violations of the CWA. Count I related to the allegedly unpermitted stormwater runoff from Donaldson's construction activities. Count II concerned the allegedly unpermitted construction activities in the wetlands on the Donaldson Property. Counts III and IV

10

alleged that Donaldson and Howard County violated Maryland's water quality standards by failing to conduct an antidegradation review. None have merit. Although Count I is actionable under the CWA, it cannot form the basis of a citizen suit because the violation is "wholly past." *Gwaltney*, 484 U.S. at 64. And the other three counts do not state a claim under the CWA.

A.

In Count I, Schneider claimed that Donaldson violated the CWA by starting construction on the funeral home without a permit for the stormwater runoff. But because Donaldson is now covered under Maryland's GCP, the CWA violation is "wholly past" and can no longer be the subject of a CWA citizen suit. *Gwaltney*, 484 U.S. at 64.

The CWA creates a strict liability scheme that prohibits the "discharge of any pollutant" to U.S. waters and wetlands without a permit.[2] 33 U.S.C. § 1311(a); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 412 F.3d 536, 540 (4th Cir. 2005). The most common permit is a National Pollutant Discharge Elimination System (NPDES) permit. 33 U.S.C. § 1342; 40 C.F.R. pt. 122. The EPA has delegated to MDE the authority to issue both individual and general NPDES permits. 33 U.S.C. §§ 1342(a)(5), 1362(1); EPA, *NPDES State Program Information*.[3] An individual permit is customized to the site-specific conditions

---

[2] "Discharge of any pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). "Navigable waters" means "the waters of the United States, including the territorial seas" and certain wetlands. § 1362(7); *Rapanos v. United States*, 547 U.S. 715, 725 (2006) (plurality).

[3] https://www.epa.gov/npdes/npdes-state-program-information (last visited Apr. 3, 2018) (saved as ECF opinion attachment No. 1).

11

of a single discharger. EPA, *NPDES Permit Basics* (July 24, 2017).[4] A general permit, by contrast, "cover[s] multiple dischargers with similar operations and types of discharges based on the permit writer's professional knowledge of those types of activities and discharges." *Id.* The "general permit is issued to no one in particular with multiple dischargers obtaining coverage under that general permit after it is issued, consistent with the permit eligibility and authorization provisions." *Id.*

Stormwater runoff from small construction activities (covering one to five acres) constitutes a pollutant discharge. 40 C.F.R. § 122.26(a)(9)(i)(B), (b)(15)(i). As a result, any person doing a small construction project must either get an individual NPDES permit or receive coverage under a general NPDES permit. 40 C.F.R. § 122.26(c)(1).

Maryland issued the GCP as a general NPDES permit that provides statewide authorization for stormwater runoff from qualifying construction activities. COMAR § 26.08.04.09(A). The permit was most recently reissued on January 1, 2015 and runs for five years. To apply for coverage, an applicant need only submit to MDE a notice of intent to be covered by the permit. Unless MDE receives adverse public comments during the two-week public notification period and unless MDE independently decides that the project requires additional permits, the agency will promptly approve coverage. MDE directs all projects to "seek coverage under the General Permit rather than an Individual Permit unless otherwise directed by MDE." MDE, *General Permit for Stormwater Associated with*

---

[4] https://www.epa.gov/npdes/npdes-permit-basic (saved as ECF opinion attachment No. 2).

12

*Construction Activity*.[5]  Once covered by the GCP, the permittee will not be liable under the CWA for stormwater runoff from construction activities as long as the permittee complies with the terms of the permit.  MDE has concluded that stormwater runoff by itself "is unlikely to cause or contribute to an excursion above water quality standards if in compliance with the [applicable] law and regulations."  MDE, *Response to Public Comments Regarding the 2014 General Permit for Stormwater Associated with Construction Activity* 7 (Oct. 28, 2014).[6]

In Count I, Schneider alleged that Donaldson violated the CWA when he began construction on the funeral home without a NPDES permit.  We agree that Donaldson violated the CWA in March 2016 when he began construction without a permit.  But Donaldson has been covered by the GCP since April 19, 2016.  As a result, Donaldson is no longer conducting unpermitted construction activities—and has not been since *almost four months before* Schneider filed his lawsuit.  Schneider cannot bring a citizen suit for this wholly past violation.  *Laidlaw*, 528 U.S. at 175; *Gwaltney*, 484 U.S. at 64.

Schneider argues that by acknowledging Donaldson's coverage under the GCP, the district court improperly converted the Defendants' motions to dismiss into motions for summary judgment.  Appellant Opening Br. 31–32.  But as we explained above, the district court could properly consider the document proving Donaldson's coverage under the GCP

---

[5]  http://mde.maryland.gov/programs/Water/Compliance/Pages/gp_construction.aspx (last visited Apr. 3, 2018) (saved as ECF opinion attachment No. 3).

[6]  http://mde.maryland.gov/programs/Permits/WaterManagementPermits/Documents/Response-to-Comments-2014-GP-Final.pdf (saved as ECF opinion attachment No. 4).

13

because it is integral to Schneider's complaint and because Donaldson challenges the factual sufficiency of Schneider's allegations. *Goines*, 822 F.3d at 166; *Alcorn*, 820 F.3d at 629. Schneider also argues that the district court improperly invoked the CWA permit shield, which protects a CWA permit holder from CWA liability as long as the permittee complies with the terms of the permit and only discharges pollutants in accordance with what was reported to the permitting authority. *Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., Md.*, 268 F.3d 255, 259 (4th Cir. 2001). But the permit shield is only relevant if a plaintiff pleads noncompliance with the terms of a permit or its application requirements, *see id.*; *Ohio Valley Envtl. Coal. v. Fola Coal Co., LLC*, 845 F.3d 133, 142 (4th Cir. 2017)—something Schneider did not do. Instead, he alleged only that Donaldson *lacked* a permit. Because Donaldson did not actually lack a permit when the complaint was filed, the district court did not err when it found that the alleged unpermitted discharge was wholly past and therefore insufficient to form the basis of a CWA citizen suit.

At bottom, Schneider does not dispute as a factual matter that MDE granted Donaldson coverage under the GCP on April 19, 2016. Instead, Schneider now attempts before this Court to challenge the validity of Donaldson's coverage under the GCP and the sufficiency of Donaldson's compliance with the GCP. Appellant Br. 28–36. But because he did not plead any of these points in his complaint—the complaint only alleged that Donaldson *lacked* coverage under the GCP—he cannot now raise them here.[7] Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 677–79. Because Schneider only pleaded in Count I that Donaldson

---

[7] We express no view on the validity of Donaldson's GCP permit or his compliance with its terms because these points exceed the scope of the complaint as pleaded.

14

lacked a permit for the stormwater runoff from the funeral home construction site, and because Donaldson is now covered by the GCP for that runoff, there is no ongoing violation of the CWA. Thus, Count I cannot form the basis of a CWA citizen suit. *Gwaltney*, 484 U.S. at 64.

B.

In Count II, Schneider alleged unpermitted construction activities in the wetlands. We find that he has failed to state a claim.

The CWA and Maryland law each place additional restrictions on the discharge of dredge or fill material into wetlands. Dredge material is material (e.g., rocks and soil) excavated from a water, and fill material is material added to a water that changes its bottom elevation or replaces any portion of that water with dry land. 40 C.F.R. § 232.2. Under the CWA, anyone who wants to discharge dredge or fill material into a wetland needs a Section 404 permit from the U.S. Army Corps of Engineers. 33 U.S.C. § 1344; 33 C.F.R. § 323.3. Separately, under Maryland law, anyone who performs certain regulated activities, including removing soil from and dumping fill material into a nontidal wetland or its 25-foot buffer, must get a permit or letter of exemption from the state. COMAR § 26.23.02.01; *id.* § 26.23.01.01(14), (74).

In Count II, Schneider alleged that Donaldson began construction near the wetlands without applying for or obtaining a Section 404 permit from the Corps. But Schneider has forfeited any challenge to the district court's dismissal of this claim because he did not make any argument about dredge or fill discharges in his opening brief. *Ogundipe v. Mukasey*, 541 F.3d 257, 260 n.4 (4th Cir. 2008).

15

Even if we were to consider Count II, Schneider's argument fails because he pleaded only conclusory factual statements in the complaint. Schneider claimed that "Defendants' actions have resulted in, *inter alia*, dredged spoil, solid waste, biological materials, heat, rock, sand, cellar dirt and/or industrial, municipal, and agricultural waste being discharged into the jurisdictional waters of the United States (and specifically the tributaries of the Patuxent River), without a permit to do so." J.A. 4. But this is merely an incomplete list of what the CWA considers to be a "pollutant": "*dredged spoil*, *solid waste*, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, *biological materials*, radioactive materials, *heat*, wrecked or discarded equipment, *rock*, *sand*, *cellar dirt* and *industrial, municipal, and agricultural waste* discharged into water." 33 U.S.C. § 1362(6) (emphasis added). A "threadbare recital[] of the elements of a cause of action" does not constitute a plausible claim. *Iqbal*, 556 U.S. at 678. Schneider also alleged that "Donaldson . . . commenced construction on the Mortuary in and/or proximate to jurisdictional waters, wetlands or protective buffers thereof, no later than March 26, 2016, placing machinery, grading, and clearing vegetation on the [Donaldson] Property." J.A. 18. But there are no factual allegations to support this vague assertion that Donaldson is doing anything *in* the wetlands.[8] To the contrary, the exhibits Schneider attached to his own complaint evince Donaldson's *compliance* with his CWA obligation. When MDE and Howard County discovered that the Donaldson Property contained wetlands,

---

[8] Nor are there allegations that he is doing anything in the protective buffer. But discharge of dredge and fill material in a protective buffer only violates Maryland state law, not the CWA, and Schneider's complaint only alleges violations of the CWA.

Donaldson: told the County that he planned to revise his site development plans to avoid disturbing the wetlands or the buffer, J.A. 78–79; had an environmental consultant delineate the wetlands and the 25-foot buffer with subsequent MDE approval, J.A. 80–96; and submitted revised site development plans that acknowledged the wetlands, J.A. 13–14. These exhibits prevail over the bare allegations of the complaint. *See Goines*, 822 F.3d at 166.

Schneider's complaint contains no other allegations related to Donaldson's purported discharge of dredge or fill material into the wetlands. Therefore, Schneider has failed to state a claim that Donaldson is violating CWA's prohibition on discharging dredge or fill material without a permit.

C.

In Counts III and IV, Schneider claimed that Donaldson and Howard County each violated Maryland's water quality standards by not conducting an antidegradation review. But because neither has an obligation in this circumstance to conduct such a review, Schneider's claims fail.

The CWA and the EPA require each state to adopt water quality standards. 33 U.S.C. § 1313; 40 C.F.R. § 131.2. States use the water quality standards when developing permit limits and evaluating proposed discharges of pollutants. 40 C.F.R. § 131.21(d). When a water's quality is "better than the minimum requirements specified by the water quality standards"—such as is true about Carrolls Branch 1 and its tributaries, COMAR § 26.08.02.04-1(O)—Maryland designates that water as Tier II. COMAR § 26.08.02.04-1(A); *see* 40 C.F.R. § 131.12(a)(2).

17

EPA and MDE regulations mandate that higher quality waters "shall be maintained." 40 C.F.R. § 131.12(a)(2); COMAR § 26.08.02.04-1(A). To that end, whenever a person or entity applies for "a new discharge permit or major modification of an existing discharge permit" that "will result in a new, or an increased, permitted annual discharge of pollutants and a potential impact to water quality," they must first conduct an "antidegradation review." COMAR § 26.08.02.04-1(B), (F). If these impacts to water quality are "unavoidable," the applicant must also "prepare and document a social and economic justification." COMAR § 26.08.02.04-1(B). MDE then determines through a public process whether the discharges are justified.

In Count III, Schneider alleged that Donaldson failed to submit an antidegradation review and social and economic justification, which Schneider claimed were statutorily required prior to discharging pollutants into a Tier II waterway or applying for a NPDES permit. But an antidegradation review and social and economic justification are only required when a person applies for a new permit or for a major modification of an existing permit, COMAR § 26.08.02.04-1(F), (B)—and Donaldson did neither. Instead, he applied for coverage under the GCP, a general permit already in effect for over a year before he applied. Under Maryland law, no antidegradation review was required. COMAR § 26.08.02.04-1(B). Nor did Donaldson deprive Schneider of a procedural or informational right to an antidegradation review, Appellant Opening Br. 21, 29–31, 34, because Donaldson was not obligated to conduct one.

In addition, there are no allegations that *operating* a funeral home on the Donaldson Property will cause discharges to a Tier II water or otherwise violate a CWA "effluent

18

standard or limitation," as is necessary for bringing a citizen suit. § 1365(a)(1). Schneider points to no law requiring Donaldson to comply with the antidegradation policy simply because he will eventually operate a funeral home next to a Tier II water. Therefore, Schneider failed to state a claim in Count III that Donaldson is violating the CWA by not conducting an antidegradation review.

In Count IV, Schneider alleged that Howard County violated the CWA when it did not conduct an antidegradation review prior to issuing Donaldson a Commercial New Building Permit. Now on appeal, Schneider argues to this Court that Howard County has violated either its delegated authority under the CWA or the terms of its own NPDES permit for its own municipal storm system. Appellant Opening Br. 41–44. These claims are also without merit.

It is true that Howard County does have some obligations under the CWA. Among others, Howard County has its own NPDES permit to discharge pollutants via its own municipal separate storm sewer system (the "MS4 permit"), which does impose certain obligations related to stormwater discharges and water quality standards. But these obligations relate to the municipal storm sewer system *owned and operated by Howard County*. The MS4 permit does not obligate Howard County to "ensure that all rain water touching private property in the County is rendered pure before it enters a river or stream." County Resp. Br. 26. Nor does it impose on the County an obligation to conduct antidegradation reviews of all construction projects in the County. Indeed, Schneider concedes in his opening brief that "MDE considers the MS4 Permit for Howard County to be the entire county *with the exception of lands which have their own NPDES stormwater*

19

*permits*." Appellant Opening Br. 44 (citation omitted) (emphasis added). The Donaldson Property is just such a land with its own NPDES stormwater permit.

At bottom, Schneider can point to no law that requires Howard County to conduct an antidegradation review before issuing Donaldson zoning and building permits. To the contrary, Maryland regulations clearly state that the obligation to conduct an antidegradation review rests on the permit *applicant*. COMAR § 26.08.02.04-1(B), (F). And as discussed above, Donaldson had no obligation to conduct one either. Therefore, we conclude that Schneider failed to state a claim in Count IV for any violation of the CWA by Howard County.[9]

## IV.

Because Schneider has not pleaded any ongoing violation of the CWA by Donaldson or Howard County, the district court decision is

*AFFIRMED*.

---

[9] At the interstices of this litigation, Schneider has argued that Howard County and Donaldson violated various provisions of Howard County's local regulations. But purported violations of local zoning regulations are not actionable violations of the CWA, and Schneider's complaint rests entirely on the CWA. And absent a jurisdictional hook, they are not issues for a federal court under federal question jurisdiction, particularly when we affirm the dismissal of all federal claims. Allegations that Howard County violated local or state regulations are best brought in state court. *Cf. Perdue Farms Inc. v. Hadder*, 675 A.2d 577, 581 (Md. Ct. Spec. App. 1996) (evaluating whether a local county zoning boards erred by imposing requirements that inherently conflict with MDE regulations).